IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **DIEGO ANTONIO RAFAEL CAMARGO-WASSERMAN** a/k/a "Deigo Antonio Camargo," a/k/a Diego Anton Rafael Camargo-Wasserman, <br><br> Defendant. | No. 18-04025-01-CR-C-SRB |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Jeffrey P. Ray, the United States Attorney for the Western District of Missouri and undersigned counsel, respectfully submits this sentencing memorandum in the above captioned matter, set for a sentencing hearing on April 9, 2025. For the reasons set forth below, the Government recommends that the Court sentence the defendant, Diego Antonio Rafael Camargo-Wasserman, to 210 months' imprisonment and five years' supervised release.

### I. BACKGROUND

The investigation began on July 1, 2010 when a Boone County Sheriff's detective queried records for the Columbia area for IP addresses of computers that have been identified as offering child pornography. These records are logged by automated software each time known child pornography is identified by the SHA1 value. A SHA1 is the unique digital signature to identify a file.

On July 7, 2010, the detective observed that IP address 69.29.25.91 had been sharing child pornography from June 25, 2010, through July 6, 2010. The IP address was observed with 39 unique files and, of those files, 13 were identified as child pornography. The IP address was registered to S. W., at an address in Columbia, Missouri. The account was created on June 28, 2006, and was currently active. On July 8, 2010, the detective was granted a search warrant for the residence, which included the seizure of computers and computer equipment for off-premises examination.

On July 13, 2010, detectives with the Mid-Missouri Internet Crimes Task Force executed a search warrant at 6390 S. Sabine Drive, Columbia, Missouri. Several items were seized from the residence, including hard drives, computers, thumb drives, cell phones, a night camera and DVDs. Items seized from the bedroom of DIEGO ANTONIO RAFAEL CAMARGO-WASSERMAN included a Sony laptop computer, serial number C600GRVV, a Bushnell night camera, a Western Digital USB hard drive, serial number WXR0E99RSY26, a small black storage device, 2 mini DVDs, 1 CD, 1 DVD and a USB flash drive.

Upon arrival at the residence, the detective asked CAMARGO-WASSERMAN if he used a file-sharing program and he answered "Yes." CAMARGO-WASSERMAN mentioned he had Limewire. The detective asked CAMARGO-WASSERMAN if he had ever used Limewire to download pornography images and he responded, "Yeah." CAMARGO-WASSERMAN was asked to explain child pornography, and he stated that if the person is over 18 they are legal to show their body to the world. CAMARGO-WASSERMAN admitted that child pornography files would be found on his computer. CAMARGO-WASSERMAN stated that he thought he had 5 or 6 files on his computer involving children, and that the children in the videos were 9 or 10 years old.

Examination by a computer forensic examiner of the Sony laptop computer, serial number C600GRVV, which contained a Toshiba 320 gigabyte hard drive, serial number 58CAF1PIS (manufactured in China), seized from CAMARGO-WASSERMAN's bedroom, revealed approximately 26 child pornography videos located in the Limewire Saved and Incomplete folders. All of the videos in the Incomplete folder had been previewed. Many of the videos involved prepubescent children, the youngest of which appeared to be a 3-year-old female. Also located was one photograph which may be child pornography and approximately 15 videos that may contain child pornography, but not enough information or video was available to make that determination.

Examination of the HP Tower computer, serial number CNH5470623, revealed that Limewire had been installed on that machine. No child pornography videos or photographs were found. Four pornographic videos were located in two different Limewire folders, two of which were associated with "Ninos" user account for the computer. By conducting word searches, The computer forensic examiner also located data in file slack, which indicated the "Mommy" user account had downloaded child pornography files through Limewire. The computer forensic examiner located data in Registry Restore files that indicated the "Ninos" account had downloaded child pornography.

The United States Attorney's Office filed charges against the defendant based on the above investigation, but dismissed the case after learning the defendant was deceased.

Until July of 2017, the United States Attorney's Office believed the defendant was deceased due to a certified death certificate stating he died due to cirrhosis of the liver. In July of 2017, FBI agents informed the United States Attorney's Office that the defendant had been living in Mexico since 2010. In 2013, a bail bond agent provided original and English translation copies

3

Case 2:18-cr-04025-SRB    Document 36    Filed 04/01/25    Page 3 of 11

of a certified death certificate for the defendant, medical records indicating he had final state cirrhosis, a newspaper obituary, and an invoice of cremation of the defendant reflecting he had died on October 5, 2012, and was cremated on October 12, 2012. As a result, the United States Attorney's Office dismissed child pornography charges that had been pending since 2010. The documentation provided by the bail bond agent was fraudulent and the defendant was very much alive (PSR ¶¶ 22-25.)

The defendant was arrested by Interpol officers in Mexico on February 11, 2019. He initially claimed not to be Diego Antonio Rafael Camargo-Wasserman, but his identity was confirmed. He fought extradition to the United States until March 2024, when he waived all appeals (PSR ¶ 26.)

A subsequent computer forensic examination was conducted in 2024, identifying additional videos and images depicting child pornography.

The United States Probation Office calculated the Sentencing Guidelines as follows:

| | |
|---|---|
| **Base Offense Level: § 2G2.2** | **22** |
| 2G2.2(b)(2) | +2 |
| 2G2.2(b)(3)(B) | +5 |
| 2G2.2(b)(4) | +4 |
| 2G2.2(b)(6) | +2 |
| 2G2.2(b)(7)(D) | +5 |
| **Obstruction** | **+2** |
| **Total Offense Level** | **42** |

The Government calculates the Sentencing Guidelines as follows:

| | |
|---|---|
| **Base Offense Level: § 2G2.2** | **22** |
| 2G2.2(b)(2) | +2 |
| 2G2.2(b)(4) | +4 |
| 2G2.2(b)(6) | +2 |
| 2G2.2(b)(7)(D) | +5 |
| **Obstruction** | **+2** |
| **Total Offense Level** | **37** |

With his Criminal History Category of I, the Government's calculation results in an applicable Guidelines range of 262 to 327 months. The statutory maximum is 20 years, so the applicable guideline is 240 months. The Government recommends a sentence of 210 months.

## II. DISCUSSION

Even after *United States v. Booker*, 543 U.S. 220 (2005), sentencing begins with a properly calculated advisory Sentencing Guidelines range, including any applicable departures. *See* United States Sentencing Commission, Guidelines Manual, § 1B1.1(a) and (b). The Court then must consider that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. USSG § 1.1B1(c).

The Supreme Court has observed that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). The Government submits that this case falls within that category of cases for which the Guidelines sentence is sufficient, but not greater than necessary, to meet the goals outlined in 18 U.S.C. § 3553(a).

### A. *Objections to the PSR*

The defendant first objects to the application of an enhancement for obstruction of justice. The defendant's conduct in this case supports application of this enhancement. § 3C1.1 states, "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct or (B) a closely related offense." In this case, the defendant swallowed 12 2mg Ativan tablets while a search warrant was being executed at his residence. He

5

was then taken to the hospital. The defendant left the hospital and failed to appear for state cases that were pending. The defendant then made the decision to leave the country, knowing he had pending cases in Boone County, Missouri and he was being investigated for possession of child pornography. Ultimately the defendant was complicit with faking his death, changing his identity, and failing to answer his charges in the United States. A counterfeit death certificate was submitted to the United States Attorney's office, which led to the dismissal of his charges. When he was ultimately arrested in 2019, he first denied his true identity and chose to extend the proceedings by fighting extradition for almost five years. The defendant's conduct clearly impeded the administration of justice, and this enhancement was appropriately applied.

The defendant next objects to the denial of acceptance of responsibility. A case where an individual fakes his death is unusual, but certainly demonstrates a failure to accept responsibility. Additionally, as stated above, delaying the process by five years in Mexico and giving a false identityis also inconsistent with acceptance of responsibility. Therefore, the Government does not support applying the acceptance of responsibility reduction.

The Government agrees with the defendant that a distribution enhancement should not be applied in this case.

### B.   *Application of the § 3553(a) Factors*

#### 1.   The History and Characteristics of the Defendant

The defendant's history and characteristics are the first of the factors enumerated in 18 U.S.C. § 3553(a)(1). This case is unusual because the defendant fled to Mexico before he could be held accountable for any prior offenses he may have committed. At the time when the defendant fled to Mexico, he had been charged with several offenses. On January 29, 2010, the defendant was charged with Peace Disturbance in Case No. 10BA-CR01258. This case involved allegations

that the defendant was harassing another student at his high school. Witnesses identified him as the aggressor (PSR ¶ 59.) The defendant was also charged with more serious offenses. On March 24, 2010, the defendant was charged with Burglary in the Second Degree and two counts of Robbery in the First Degree in case number 10BA-CR01212. This case involved three separate offenses. The first occurred on March 5, 2010 where the defendant and a co-defendant allegedly burglarized a business in Columbia. According to reports, the defendant implicated himself in a post-*Miranda* interview. In a later incident on March 8, 2010, the defendant was alleged to have acted as the getaway driver in a robbery at 205 Safari Drive in Columbia, Missouri. Investigation showed that the defendant's co-defendant entered the business and displayed a silver semiautomatic handgun. The defendant made statements that he assisted in the planning of the robbery and also received proceeds. Reports also reflect that on March 9, 2010, the defendant made statements implicating himself in a robbery at the Dream Smoke Shop in Columbia, Missouri. A co-defendant displayed a silver semiautomatic handgun and stole an undisclosed amount of money (PSR ¶ 60.) On July 7, 2010, the defendant was charged with driving while intoxicated in case number 10BA-CR03073 (PSR ¶ 61.) On July 13, 2010, the defendant was charged with possession of a controlled substance in case number 10BA-CR03199. These were found during the execution of the search warrant which led to the current offense. The defendant admitted to taking 12 Ativan 2mg tablets (PSR ¶ 62.) While arrests and non-adjudicated offenses are not usually given significant weight, the only reason these cases have not been resolved is because the defendant left the country to avoid prosecution.

      The defendant is a dual citizen of the United States and Mexico. The defendant failed to appear for the multiple offenses listed above when returning to Mexico. The defendant's father is an attorney in Mexico and was influential in providing counterfeit documents convincing multiple

7

Case 2:18-cr-04025-SRB    Document 36    Filed 04/01/25    Page 7 of 11

jurisdictions the defendant was deceased. The defendant describes a good relationship with his father and reports contacting him daily. The defendant is estranged from his Mother, who resides in Jefferson City, Missouri. The defendant married a woman in Mexico City, Mexico on January 29, 2024 and fathered a son who is approximately 2 years old (PSR ¶ 69). This would have occurred while he was awaiting extradition in a Mexican Jail.

The defendant reported minimal cocaine and methamphetamine use to the Probation Officer, however previously reported smoking marijuana daily and consuming approximately 3 to 5 grams of cocaine weekly. There is also evidence of a history of substance abuse prior to the defendant fleeing to Mexico.

The defendant did not graduate high school and reported he was working in agriculture in Mexico prior to be taken into custody. Due to the defendant being out of the country, this was not able to be verified (PSR ¶ 82.)

The defendant's history of avoiding accountability supports the 210 month sentence recommended by the Government.

## 2. The Need to Protect the Public from Future Crimes by the Defendant and the Nature and Circumstances of the Offense

The need to protect the public from the defendant's own future crimes, 18 U.S.C. § 3553(a)(1)(C), the nature and circumstances of the offense of conviction, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A), and the need to deter other criminal conduct, 18 U.S.C. § 3553(a)(2)(B), all weigh in favor of the 210-month sentence recommended by the Government. As noted above, the defendant fled the country before addressing his issues with sex offending, violent crime, and substance abuse. Had he remained in

the United States and resolved his cases, the defendant would have had the opportunity to engage in sex offender treatment, substance abuse treatment, and mental health treatment. He would have been placed on some period of supervision, whether probation or supervised release. He also would have had to register as a sex offender which alerts the community of a possible threat. This would give the community some assurance that he would not re-offend. However, it is unknown whether the defendant continued re-offending when he went to Mexico. Defense counsel argues his client's father is to blame for the defendant leaving the country, falsifying death records, and failing to return to the United States to answer his crimes. However, the defendant was a legal adult when he fled to Mexico and was 27 years old when arrested for the current offense. The defendant chose to remain in a Mexican Jail and fight extradition rather than return to the United States. Blaming his father for this delay, is another example of a failure to take responsibility.

The defendant was charged in 2010 with possession of child pornography. He possessed images and videos of an extremely disturbing nature including minors subjected to bestiality. The defendant's conduct in this case shows he is a danger to the community, and his failure to answer to the charges shows a lack of respect for the law. The safety of the public and a respect for the law demands that the Court impose a significant sentence and weighs in favor of the 210-month sentence in this case.

    **3.**    **The Need to Avoid Unwarranted Sentencing Disparities**

Uniformity in sentencing among similarly-situated defendants is also an important element of sentencing, 18 U.S.C. § 3553(a)(6), and in general, this factor weighs in favor of a Guidelines-range sentence, since the Court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" when calculating and reviewing the Guidelines range. *Gall v. United States*, 552 U.S. 38, 54 (2007). In this case, the defendant's criminal history score is

underrepresented. The defendant has no criminal convictions because he avoided prosecution. The Government's recommendation is the low end of the guidelines calculated by the Government utilizing a criminal history score of 1. The Government's recommended sentence of 210 months will not create an unwarranted sentencing disparity.

    **4.    Balancing of All § 3553(a) Factors**

While 210 months is a significant sentence, it is warranted due to the defendant's obstruction, the defendant's history and characteristics, as well as the nature and circumstances of the offense. While the Government is aware that the defendant spent approximately five years in a Mexican prison, that was entirely his choice. To promote respect for the law, a lengthy sentence is warranted.

**C.    *Recommended Sentence for Monetary Penalties***

Due to the defendant's inability to pay, the Government is not advocating that a fine be imposed. However, the $100 Special Assessment per count is mandatory and, as a result, $200 must be paid in full by the defendant no later than the day of sentencing.

### IV.    CONCLUSION

The Government respectfully suggests that a sentence of 210 months constitutes a sentence sufficient, but not greater than necessary, to achieve justice.

    Respectfully submitted,

    **Jeffrey P. Ray**
    United States Attorney

By    /S/

    **Ashley S. Turner**
    Assistant United States Attorney
    Missouri Bar No. 62314

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on April 1, 2025, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to current counsel of record.

/S/
**Ashley S. Turner**
Assistant United States Attorney

11